Council, if you could just wait one minute, we're going to, of course, when everybody's set, then they'll, there won't be so many wrestling papers and we'll get a better recording. Are you ready to go? Looks like we are. Great. Okay. Good morning and may it please the court. I'm Dominic Dre and with Andy Spielman, I represent the appellant Silverton Mountain Guides. I'll endeavor to save two minutes for rebuttal. Okay. The Judicial Council was correct that former Judge Kindred's abhorrent behavior would cause reasonable people to question his impartiality. And how could it not? The facts in this case are exceptional. They include a sexual assault of a woman who had previously served as his law clerk and then at the time of this litigation, worked at the U.S. Attorney's Office, an inappropriate relationship with a second attorney in the U.S. Attorney's Office, alcohol abuse, jokes about bringing heroin to parties with law clerks, lying to the Judicial Council, telling the victim to, quote, keep your head down and shut the expletive up just a couple months before this case was assigned, a pathological tendency to lie, and a professed motto of who gives an expletive about ethics. And even according to his own terms, former Judge Kindred described himself as extremely petty. Might a reasonable person— Counselor, our time is going to run real fast here, so I'm going to jump in. The groundwork that you're laying seems to me to be an argument for every single case that Judge Kindred touched has to be undone because he was unethical and, you know, we can't trust any decision that he made. Is that your argument? And if it's not, then what is unique about this case? Fair question, because the floodgates are a chief argument from the other side, and no, of course, this doesn't require revisiting everything that he did in his, I think, three and a half years on the bench, which is not a terribly long run anyway. But the limiting—here are some limiting principles for the Court. First, it would have to be a case in which the government was on the other side, a civil matter, because I believe they've already conceded all of the criminal matters, and in which the government prevailed. So there aren't going to be that many of those to begin with. Second, it would require Rule 60B relief, the posture in which we're here today, and 60B requires timely application be made. You know, this Court's—we cite the Bynone decision, I believe. I'm probably mispronouncing it from this Court about the timeliness requirement. It relates to when a person would have learned of the claim. I think at this point, you would have had to bring your Rule 60 motion, and as far as I know, we're the only party to have done so. And then the other—the final thing, and this is—this really goes to the heart of the issue, is the timeline in this case is incredibly important. Our case was assigned to Judge Kindred within days of Judge Murguia—Chief Judge Murguia appointing the special committee to investigate him and authorizing the complaint. It was during our case—obviously, we didn't know any of this. The U.S. Attorney's Office did, but we didn't know any of this. So during our case, he was submitting false statements to the Judicial Council. He successfully pressured the more senior AUSA to lie to the Judicial Council. He had, you know, become, as the Judicial Council said—I think it's pages 44 and 45—obsessed with maintaining secrecy. So it is during our case exactly—the timing is uncanny—where the maximum incentive for him to curry favor with the U.S. Attorney's Office was—yeah, it was at its zenith at the time. But he would have to know a lot. And I—you're asking us to attribute this conflict from the criminal side to the civil side. That's quite a lift. That's a heavy lift, counsel. So it's not exactly— And the reason for that is I don't think that former Judge Kindred—we don't have anything in the record that indicates that the individuals that you've identified were involved in this case at all, right? I think that's uncontested.  Okay. So I think the only way you get there is that this conflict—and no one here is going to understate the severity of the conduct. So please don't misunderstand me. But it is a different rule, right, when you go to attribute this to a different part of a governmental agency. So what's your best shot that Judge Gleeson was incorrect on that point? I want to make a—yes. And so one of the errors in the court below, I think, is running together the two theories here. There's the 455A recusal requirement, and then there's conflict imputation. I'm going to focus on the former because I think it's the stronger and easier argument. But please note that the court below kind of elides that distinction, and that's part of what leads to trouble in the decision. So the court— But if we're going to start—forgive me. I think your argument has shifted significantly from the one you raised in the district court. You had one argument in the district court that I think you've abandoned that had to do with the ethics, I'll say, of the competitor for the Forest Service petition. That's not before us, right? That's correct. That would be taken up on remand. Okay. So before the district court, did you make this other argument, which is that anyone working in the U.S. Attorney's Office in either civil or criminal division, that former Judge Kindred would have had a motive to curry favor with all of them, any of them, because of the ongoing judicial proceeding? Was that before Judge Gleeson? Yes. Where? I'll have to check the briefs, Your Honor. I don't have that at my fingertips, I'm sorry to say. But our motion, I believe, is included in the excerpts of record starting at around page 20. I will check it during the time off. But, again, I want to focus on the standard for 455A is not conflict imputation. And so it's a totality of the circumstances. Would reasonable people question this man's impartiality, or would they perceive a risk of bias? Reasonable, well-informed people. Correct. Hence, it circles back, I think, to well-informed people recognizing there's a difference between civil attorneys and criminal attorneys. Yes, that's true. And so the one and only, and I'll concede this point, the one and only fact in the record that might lead a reasonable person to think that he wouldn't be biased in favor, that he would hold the scales of justice true, as Caperton says, the one and only fact is that these lawyers were not on the matter, they were criminal lawyers instead. That, however, is belied by all of the rest of the evidence, including the fact that we I'm going to carefully describe the facts in this case because we have a crowded gallery, but of all of the facts that went into this, that they were known, you know, a third U.S. attorney had been assigned off all of his kindred cases. We know that, quote, unquote, several of people in that office testified before the judicial counsel during the pendency of this litigation. A reasonable person would know about all of this. So what's the incentive? And the judge doesn't know who in that office knows and doesn't know. But everything about his life depends on this. I mean, bias or the appearance of bias is a function of two things. Having an interest in the case and then having the character, whether or not you're going to act on it. His obsession with secrecy, I mean, he met, talk about a terrible strategy, he met with the woman he had assaulted and told her to keep her head down and shut the F up. So we know that. But back to the, you know, we have Williams and some other cases that says that you don't disqualify the entire office. Now, that's a disqualification case, not a recusal case. I understand that. But I think to Judge Kristen's point, where's the line here? In answer to Judge Forrest, he said, well, there isn't that big a universe. But I think the, if I understand your answer correctly, and I may not, so you can correct me, you think he should have recused on every civil case that emanated out of the U.S. Attorney's Office.  And I know you said that's not that big a universe. But I mean, is that your position? At this time. I mean, before he had assaulted the woman, he could have. No, I understand. But I mean, during the relevant time. So it's really only a year. No, I understand your limiting principle. But I want to make sure I understand. You think he should recuse from everything in that office during the relevant time? Yes.  Thank you. Thank you. I'll reserve the balance.  Your Honor, may it please the Court. Derek Weiss for the United States Forest Service. Former Judge Kendred's creation of a hostile work environment and his sexual misconduct towards clerks and attorneys was abhorrent and inexcusable. They rightly led to his sanction by the Judicial Council and his resignation. But the question in this case is whether they should lead to reopening a final judgment in a case where none of the parties and none of the attorneys were involved in that scandal. I have a procedural question, and that is, was there anything in effect that would have prevented former Judge Kendred from revealing to the parties in this case that there was an investigation going on involving him? Not that I'm aware of. And I think the rules of the Judicial Misconduct Committee allow the judge under investigation to make any disclosure that he would like. Because several of the cases in this space talk about that, you know, the disclosure of the conflict as a relevant thing to think about in terms of public confidence in the process and prejudice to everybody involved. And so it does raise the question of, you know, that that goes against transparency and a demonstration of ethics. I think disclosure of the conflict is important where there is a conflict. Our fundamental proposition here is that because this was a civil case in which none of the attorneys working on the case were involved in that scandal. But we have to, I mean, I reckon there's no facts, right? Like, I'm not aware in the record that there's any concrete facts that these civil attorneys or any civil attorneys in the U.S. Attorney's Office knew the details of what was going on with this judge. Is that correct? That's my understanding. Correct. But we can also think about inferences, right? And so what do we do with that in terms of, yes, we don't have specific evidence that there were conversations between the civil and the criminal side of the House. But this is a small office. People talk in the office. Was there a legal bar preventing people from talking about this within the office? I'm not aware of a legal bar. I do think this court's case law says that we, when ruling on a Section 455 recusal question, we don't rely on speculation. And while I understand that there could be inferences that could be drawn, I don't think it's a reasonable inference here to think that the civil attorneys who were involved in this case knew about the scandal. And they certainly haven't made allegations that they did. But what do we, I mean, the legal side, we don't have to have proof of an actual conflict or an actual bias. It's the appearance, right? It's the, what is it, might reasonably be questioned. His impartiality might reasonably be questioned. So in that context, doesn't inference play maybe a bigger role than it otherwise would if you had to prove an actual impartiality or a bias? I disagree. I think in cases like Holland, the 455A standard is still looking at a thoughtful, well-informed observer who understands the facts. And so I don't think the question is whether, I think there's a difference between drawing an inference about whether there's an appearance of impartiality, because the judge might want to favor criminal attorneys who are involved in this case, as opposed to whether the civil attorneys involved in this case knew something, because that's not a fact that they've asserted or established. And I don't think, I think that's the difference between kind of speculation, which you don't do, and the appearance of impropriety, which you can look at for how the criminal attorneys might have been affected by this case. You didn't put anything in the record, no affidavits, am I correct on that? Correct. I mean, in other words, you probably could have put in the record an affidavit from the attorneys involved here that said we didn't know anything, but you didn't. Well, sorry, to be clear, the district court judge here accepted the representation of the U.S. Attorney's Office regarding the two women involved directly in the scandal. Well, can we be clear here? The representation that they weren't involved in this case at all?  Right, but Judge Thomas is asking a different point about the civil attorneys who represented the Forest Service. I mean, we know, we accept who was involved in this, but you've said here it's not reasonable to assume that everybody knew about it. And the record is bare on that, correct? It is, but I think that's partly. Why is it a fair inference in a small office that if there's some big scandal brewing, they wouldn't know about it? I mean, they're arguing the inference goes their way, you're arguing the inference goes your way, and we don't have a record, right? And I think the reason we don't have a record is because this isn't how they presented the issue in district court. But you could have defended it by saying it's an affidavit. No, we didn't know anything. Well, but I think the point is that their district court motion focused on the judge's desire to influence the two women with whom he had the improper conduct. And so our representations in district court responded to that argument they made. They raised two arguments, right? I ask opposing counsel at the top of the hour here on this point. Do you agree with that? They raised two, one of which is now a jettisoned, the one having to do with the other helicopter bidder, right? Yes. Okay. And so how would you characterize the argument that the remaining argument that Silverton raised before the district court, please? I think they made two arguments. The first was that there was a section 455 recusal issue because of the two women with whom the judge had improper relationships. And then they made an argument under the Alaska rules of professional conduct that those are imputed within the office. Even if you look in their opening brief here in this court, their 455A recusal argument focuses almost exclusively on those two women with whom the judge had relationships. They only get into questions about who else had knowledge of the events and management of the office and other people when they're talking about imputation under the Alaska rules of professional conduct. That may be, but I guess a lingering question I have is the ultimate question that Judge Gleason had to look at was whether this judicial actor's impartiality might reasonably be questioned. She knows all about what that investigation was about and the details of that as it's being presented. And so even if the parties didn't specifically identify the argument that they're identifying now, why shouldn't she be thinking about those? Because the ultimate question, I mean, we're also thinking about sort of the public confidence in the judiciary. Why isn't that an abuse of discretion not to be thinking about those broader questions, even if the parties have chosen to argue some irrelevant ethical point or ethical rule? Yeah, so I think I would make two points. The first is that I think under party presentation principles, the plaintiffs are the master of the motion they want to bring. And I think the second is there are two independent grounds here that Chief Judge Gleason ruled on. Even if this court were to disagree and think that there was a Section 455 recusal issue, Chief Judge Gleason independently determined that Rule 60B relief was not warranted here, that equitable relief left the sound discretion of the district court for the same reason that you mentioned, that Chief Judge Gleason knew the facts about the recusal. Chief Judge Gleason's also better positioned to weigh the relevant equitable factors about whether Rule 60 relief is warranted. Her decision explaining why those factors don't warrant relief here was reasonable and not an abuse of discretion. I would be remiss if I didn't quickly respond to the forfeiture argument they make in the reply brief. They say that the government failed to address the first of the Lilleberg factors. I'd point the court to page 18 of our brief where we addressed that, and we certainly didn't concede it. If there are no further questions? I don't think there are. We ask that the court affirm. Thank you. In answer to the question about where the 455A is discussed in the papers, it's at ER 26 through 30. In particular, at 28, we talk about other people in the office who are aware. I'll let the court take a look at that, but it wouldn't matter. I've read that several times. It wouldn't matter even if the argument was just that he had an incentive to curry favor with the two women involved and not with the office as a whole, because his whole career depends on them staying silent. The people he tells to keep your head down and shut the expletive up are the women involved. He doesn't have that meeting with the U.S. attorney. So, yes, there are many inferences, and I think they're adequately preserved based on the papers for the entire office. But even if you just focused on the two women involved, the second one of them breaks their silence, this guy's life is over. He has every incentive, and that's the key insight here. And, in fact, it's one of the things that colors the error below. The error below was at ER 11, 12, and 16, where the district court says you need to have evidence or facts indicating Judge Kindred was partial. That's not the standard. It's a clean legal error. The test is not actual bias or actual partiality. The test is the perception of that bias or partiality. And, in this case, the Judicial Council has done the hard work already. The violation of Canon 2A is exactly based on partiality. The quote that we repeat from ER 65 is related to people questioning his impartiality, and it goes to the core of the judicial function. Counsel, you're out of time, so let me just – I appreciate the distinctions that you've made. I think you're largely repeating the arguments made in your brief. I promise you we've read these briefs very, very carefully. But they do seem to hinge upon this notion that the contact with criminal attorneys has to be imputed to the civil side of the office. May I respond? Yes. I'm over time. That's not exactly right. I take imputation to be the technical term under Rule 111D. What is necessary is for a reasonable member of the public looking at this to question – A well-informed member of the public. Yes, of course. Assume that I'm including all of that. So we're just about out of time, but I'm going to ask you to focus on this question. Yes. What's the best argument you've got that a reasonable, well-informed member of the public would reasonably infer, because we don't have any evidence that there was any of this sort of cross-pollination that you're asking us to speculate about? What's your best shot? I think the answer is Creech, where you have –  The Creech case, which the other side doesn't discuss in their brief, but we rely on heavily. In that case – and I apologize, but I'm going to take a couple sentences if I may. I was on Creech. I know Creech very well. It's readily distinguishable. Well, Creech involves someone, an elected prosecutor, and the fear that there's some interaction in that office that would make that person look bad. There was a request, a motion in advance. It's a capital case. It was a motion in advance to ask the judge to recuse it. The judge denied it. In the process of denying, the judge made statements about the qualitative nature of that relationship with the former co-clerk that were belied by the record. Well, it is – the record in that case is nowhere near as impactful as the record in this case. And there, Your Honor is exactly correct. It was disclosed, and yet the court on mandamus ordered that the judge erred by not recusing herself. In this case – Because she had minimized and really misstated the factual record, counsel. Yes, and so in this case, you don't have minimizing of the friendship or whatever it is. You have something far more nefarious than being friends with a former co-clerk, and you have silence on it, which is just as devastating. When the question is would a member of the public think that this guy could be neutral, the answer is a resounding no, as the judicial counsel already concluded. And I encourage the court to stick up for itself and vindicate the public confidence in the judiciary. One question. You know, the difficulty in cases like this is we have to decide what a reasonable person would conclude. And my question to you is here we are sitting far away from this case, and we have an abusive discretion standard with a district judge who says, no, I don't think so. I think people in here would understand that the two sections were different. So in our standard of review, tell me why that's an abuse of discretion. Because I recognize your point fully, don't get me wrong, and I recognize the government's point. They say, well, no, a reasonable person would not assume. You say, yeah, obviously a reasonable person would assume. Yes. A legal response first, which is under abuse of discretion, legal error as to the standard. So that answer is that piece of it. And then the practical response, again, a member of the public, you know, the hypothetical reasonable person who's informed of the law and facts, doesn't need to conclude that there's not a wall, although there wasn't a wall, but doesn't need to consider that to reasonably question. It doesn't even – the person doesn't even have to conclude that the guy's biased. But reasonably question whether or not he would be impartial in a case like this, and like this meaning where his whole career and life hinges on a contemporaneous investigation that he's in the midst of lying his way through. And I don't want to stretch the court's patience, but I think the district court erred on the legal side we've already talked about, but then even on the inference by asking too specific a question. Okay. Thank you. Counsel, you just represented that there wasn't a wall within the U.S. Attorney's Office. Do you know that? Oh, I'm sorry. There's nothing in the record to say that there was a wall. All right. If there's nothing further, okay. Thank you all for your arguments. It's a very important case. We'll give it very careful consideration. We have one more argument on the oral argument calendar today. It is Patterson v. Wells Fargo.
judges: THOMAS, CHRISTEN, FORREST